IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLGA NOWAK, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-2540 |
| | : | |
| THOROUGHBRED SERVICES, INC., | : | |
|     Defendant. | : | |

**March 18, 2021**                                                                                                                  **Anita B. Brody, J.**

**MEMORANDUM**

Plaintiff Olga Nowak brings suit against Defendant Thoroughbred Services, Inc. ("Thoroughbred"), alleging gender and/or sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq*. In addition, Nowak brings a claim for wrongful discharge under Pennsylvania common law. I exercise federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the Pennsylvania state law claim pursuant to 28 U.S.C. § 1367. Currently pending is Thoroughbred's motion to dismiss. For the below reasons, I will deny Thoroughbred's motion to dismiss Nowak's Title VII and PHRA claims, and I will grant Thoroughbred's motion to dismiss Nowak's Pennsylvania wrongful discharge claim.

**I. BACKGROUND**[1]

In January 2016, Nowak began working for Thoroughbred as a Safety Coordinator. Nowak was a licensed racing official who had extensive experience as a jockey, exercise rider, and thoroughbred trainer. As the Safety Coordinator, Nowak's duties included "identifying risks and enforcing safety practices during daily horse exercise hours and live racing; checking

---

[1] All facts are taken from the Amended Complaint.

equipment utilized by horses and riders; . . . preparing incident and accident reports; . . . [and] reporting safety violations to licensed security personnel, stewards and the racing secretary." Am. Compl. ¶ 8.

In October 2018, Nowak began reporting to David Osojnak.  In November 2018, Nowak informed Osojnak of her intention to obtain a Safety Steward accreditation.  Osojnak supported Nowak's plan to get a Safety Steward accreditation and told her that he would try to get Thoroughbred to pay for the course Nowak needed to obtain the accreditation.

In November 2018, Osojnak also spoke to Nowak about her reporting of outriders for safety violations.  "Examples of reported outrider safety violations include, but are not limited to, refusing to assist with an unruly horse; and leaving the track without permission, thereby leaving horses unsupervised and/or being unable to assist in emergency situations and/or unable to activate the emergency track warning system." Am. Compl. ¶ 14.  Specifically, Osojnak instructed Nowak "to stop reporting certain outriders for safety violations due to the fact that the reports could be used as evidence that [Thoroughbred] had knowledge of unsafe conditions in any subsequent injury claim." Am. Compl. ¶ 13.

Despite Osojnak's instruction, Nowak continued to report the outriders for safety violations on a weekly, or more frequent, basis throughout her employment because she was the Safety Coordinator and was required by Pennsylvania law to report the violations.  *See* Am. Compl ¶¶ 34-35 (citing 58 Pa. Code § 163.291, 163.6).

On February 7, 2019, Osojnak told Nowak that she was being discharged because she did not have the skills to perform the Safety Coordinator position.  Nowak, a female, was replaced by Donnie Smith, a male, who had been working in the office and not in a safety role. Nowak

"had as much, or more, experience than Smith as a thoroughbred jockey, exercise rider and/or trainer; and was as, or more, qualified than Smith for the position." Am. Compl. ¶ 20.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a complaint need not be detailed." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021). But a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)). "Plausible does not mean possible. The facts must be more than 'merely consistent with a defendant's liability.' But plausible does not mean probable either. The court need only be able to draw a 'reasonable inference' that the defendant has broken the law." *Martinez*, 986 F.3d at 265 (quoting *Iqbal*, 556 U.S. at 678).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Thoroughbred moves to dismiss Nowak's Title VII and PHRA claims on the grounds that Nowak has failed to allege a prima facie case of sex or gender discrimination. Additionally, Thoroughbred moves to dismiss Nowak's wrongful termination claim because it contends that Nowak cannot establish the claim.

### A. Title VII and PHRA Claims

Nowak alleges that Thoroughbred terminated her employment due to her sex/gender in violation of Title VII and the PHRA. Under Title VII, an employer may not "discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (overruled on other grounds)). In order to state a prima facie case of sex and/or gender discrimination under Title VII and the PHRA, a plaintiff must "show that (1) she is a member of a protected class; (2) she was qualified for her

position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (citation omitted); *see also Fortes v. Boyertown Area Sch. Dist.*, No. CIV.A. 12-6063, 2014 WL 3573104, at *10 (E.D. Pa. July 18, 2014) ("The *prima facie* case for employment discrimination . . . under the PHRA is the same as under Title VII . . . ."). Thoroughbred argues that Nowak's Title VII and PHRA discrimination claims must be dismissed because she has failed to plead the second and fourth elements of a prima facie case—that she was qualified for her position and that the circumstances of her termination give rise to an inference of discrimination. Nowak counters that she is not required to allege a prima facie case of discrimination at the motion to dismiss stage and that she has plausibly pleaded her Title VII and PHRA claims.

"[F]or purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Nowak has alleged enough facts for her discrimination claims to survive a motion to dismiss. Nowak alleges that she was a licensed racing official with extensive experience as a jockey, exercise rider, and thoroughbred trainer—skills that align with her duties and responsibilities as Safety Coordinator. She performed the position of Safety Coordinator for three years prior to her termination. Moreover, in November 2018, Nowak's supervisor supported her desire to obtain a Safety Steward accreditation and even told Nowak that he would try to get Thoroughbred to pay for the course that she needed to obtain the accreditation. The

allegations that Nowak performed her position for three-years, had extensive experience in areas that aligned with her job duties and responsibilities, and her supervisor supported her intention to receive a Safety Steward accreditation raise a reasonable expectation that discovery will reveal evidence that Nowak was qualified for her position.

Nowak also alleges that when she was terminated, she was replaced by a male who had not been working in a safety role, who was no more qualified than Nowak, and who possessed the same or less experience than Nowak as a jockey, exercise rider, and trainer. These facts also raise a reasonable expectation that discovery will reveal evidence that Nowak's termination occurred under circumstances that give rise to an inference of discrimination.

I will deny Thoroughbred's motion to dismiss Nowak's Title VII and PHRA claims because she has set forth sufficient facts to plausibly plead her claims.

**B. Wrongful Discharge Claim**

Nowak alleges that Thoroughbred violated Pennsylvania law by wrongfully terminating her employment in retaliation for her continued reporting of safety violations. In Pennsylvania, there is an "extremely strong" presumption" that employment is at-will and an employer may terminate an employee for any reason absent an employment contract. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286-87 (Pa. 2000). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009). An employee is entitled to bring a cause of action for termination of an at-will employment relationship "only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth." *McLaughlin*, 750 A.2d at 287. In order to set forth a claim for wrongful discharge, a plaintiff "must allege that some *public* policy of *this* Commonwealth is implicated,

6

undermined, or violated because of the employer's termination of the employee." *Id.* at 289. Where an employer infringes on an employee's statutory rights, courts have recognized a public policy exception to at-will employment. *Weaver*, 975 A.2d at 563.

Nowak alleges that Thoroughbred terminated her employment in retaliation for her compliance with her statutorily mandated duty to report safety violations. Pennsylvania statute provides: "A person licensed by the [Horse Racing] Commission . . . who is in possession of information regarding attempts or acts done in violation of this chapter or statute affecting racing, shall promptly report the knowledge or information to the stewards, the Commission or its licensed security personnel" 58 Pa. Code § 163.6(a). The statute further provides: "Racing associations shall take every reasonable precaution to make their premises safe for the protection of the persons and property of patrons and licensees." 58 Pa. Code § 163.291(a). Nowak alleges that she was a licensed racing official who was required pursuant to §§ 163.6(a), 163.291(a) to report safety violations to the stewards, the Commission, or its licensed security personnel.

Nowak contends that her wrongful discharge claim should survive dismissal because she has plausibly alleged that Thoroughbred violated public policy when it terminated her in retaliation for her continued reporting of safety violations that she was statutorily mandated to report. Thoroughbred counters that Nowak's wrongful discharge claim must be dismissed because she has not adequately alleged that her reporting of safety violations was protected by public policy or that these reports caused Thoroughbred to terminate her employment.

Nowak alleges that, in November 2018, Osojnak told her "to stop reporting certain outriders for safety violations." Am. Compl. ¶ 13. Despite this, Nowak continued to report outriders for safety violations on a weekly, or even more frequent, basis. While Nowak lists examples of reported outrider safety violations in her Amened Complaint, she does not specify

the exact safety violations she reported after Osojnak told her to stop reporting certain violations. In addition, while Nowak alleges that one of her duties as a Safety Coordinator included "reporting safety violations to licensed security personnel, stewards and the racing secretary," Am. Compl. ¶ 8, she never alleges to whom she reported any of the outrider safety violations. Moreover, while Nowak alleges that Osojnak told her to stop reporting certain outrider safety violations, she does not allege whether Osojnak or anyone else knew that she continued to report outrider safety violations after he told her not to report them.  Lastly, the Amended Complaint is silent as to whether Osojnak or someone else made the decision to terminate Nowak's employment.

Nowak has not adequately pleaded a claim for wrongful discharge.  Section 163.6(a) requires a licensed person to report violations of the statute to the stewards, the Commission, or licensed security personnel.  Section 163.291(a) requires a racing association to take every reasonable precaution to make its premises safe.  58 Pa. Code § 163.291(a).  Because Nowak does not allege to whom she reported any of the safety violations and also does not specify the exact violations that she reported, Nowak has not plausibly alleged that she was terminated in violation of public policy for exercising her statutory duty to report to the stewards, the Commission, or licensed security personnel that Thoroughbred was not taking reasonable precautions to make its premises safe.

Nowak's wrongful discharge claim fails for an additional reason—she has failed to allege facts that raise a reasonable expectation that discovery will reveal evidence of a causal link between her continued reporting of safety violations and her termination. While the Supreme Court of Pennsylvania has not articulated the elements of a cause of action for retaliatory wrongful discharge, federal courts in the Third Circuit have borrowed the analytical structure

used in Title VII retaliation to determine whether an employee has been wrongfully discharged. *Parker v. Sch. Dist. of Philadelphia*, 415 F. Supp. 3d 544, 564–65 (E.D. Pa. 2019), *aff'd*, 823 F. App'x 68 (3d Cir. 2020) (collecting cases); *see also Steele v. Pelmor Lab'ys, Inc.*, No. 16-CV-3088, 2017 WL 5515919, at *6 (E.D. Pa. Apr. 18, 2017), *aff'd*, 725 F. App'x 176 (3d Cir. 2018) ("The elements of [a wrongful discharge claim] have not been established by the Pennsylvania Supreme Court, but federal courts have predicted that it would apply the *McDonnell Douglas* framework used for retaliation suits under Title VII."). Accordingly, courts in the Third Circuit have held that an employee must show a causal link between the employee's protected activity and her termination to establish a prima facie case of retaliatory discharge.[2] *Steele*, 2017 WL 5515919, at *6; *Christman v. Cigas Mach. Shop, Inc.*, 293 F. Supp. 2d 538, 543 (E.D. Pa. 2003). A plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015).

At the motion to dismiss stage, Nowak is not required to establish a prima facie case of retaliation, but she must allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Martinez*, 986 F.3d at 266 (quoting *Fowler*, 578

---

[2] In *Rothrock v. Rothrock Motor Sales, Inc.*, the Supreme Court of Pennsylvania used a four-prong test adopted by a Washington court "as a convenient analytical framework" to determine whether an employee had demonstrated a claim for wrongful discharge. 883 A.2d 511, 516 (Pa. 2005). Although the Pennsylvania Supreme Court applied the four-prong test to the facts in *Rothrock*, it found it "unnecessary to adopt specifically as Pennsylvania law the Washington test." *Id.*

The fourth prong of the Washington test is "whether the peculiar employee's activity in the case under scrutiny was indeed a substantial factor in the employer's decision to discharge." *Id.* at 516 n.10. Because the Supreme Court of Pennsylvania did not adopt the Washington test, courts in the Third Circuit have continued to import the "causal link" requirement from Title VII retaliation cases. *See, e.g., Griesbaum v. Aventis Pharm.*, No. 3:CV-04-1726, 2006 WL 2796160, at *3 (M.D. Pa. Sept. 25, 2006), *aff'd*, 259 F. App'x 459 (3d Cir. 2007) (continuing after *Rothrock* to apply the Title VII retaliation framework to a wrongful discharge claim "absent clear direction from the Pennsylvania courts to the contrary"). Regardless of which causation standard applies, Nowak's claim must be dismissed because she has not pleaded enough facts to raise a reasonable expectation that discovery will reveal evidence that her continued reporting was causally connected to, or a substantial factor in, her termination.

F.3d at 213). Nowak does not allege whether any of the safety violations that she reported after November 2018 were the "certain outriders for safety violations" that Osojnak instructed her to stop reporting. She also does not allege whether Osojnak made the decision to terminate her or whether someone else at Thoroughbred was the decisionmaker. There is no allegation that anyone else at Thoroughbred knew that Osojnak had instructed Nowak to stop reporting these violations. Moreover, the Amended Complaint is devoid of any allegations concerning the period between November 2018, when Nowak was instructed to stop making her reports, and February 7, 2019, when she was terminated.[3] Lastly, Nowak fails to allege that anyone at Thoroughbred, including Osojnak, knew at the time of her termination that she had continued to report safety violations in contradiction to Osojnak's instructions in November 2018. Nowak fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence of a causal connection between her continued reporting of safety violations and her termination.

I will grant Thoroughbred's motion to dismiss the wrongful discharge claim because Nowak has not adequately pleaded the claim.

## VI. CONCLUSION

For the above reasons, I will deny Thoroughbred's motion to dismiss Nowak's Title VII and PHRA claims. I will grant Thoroughbred's motion to dismiss Nowak's wrongful discharge claim without prejudice to Nowak to file an amended complaint.

__s/ANITA B. BRODY, J.____<br>ANITA B. BRODY, J.

Copies **VIA ECF**

---

[3] Of course, Nowak does allege that she continued reporting safety violations during this time period.