## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLGA NOWAK, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 20-2540 |
| | : | |
| THOROUGHBRED SERVICES, INC., | : | |
| Defendant. | : | |

**December 16, 2021**                                            **Anita B. Brody, J.**

## <u>MEMORANDUM</u>

Plaintiff Olga Nowak brings suit against Defendant Thoroughbred Services, Inc.

("Thoroughbred"), alleging gender and/or sex discrimination in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human

Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*  In addition, Nowak brings a claim for

wrongful discharge under Pennsylvania common law.  I exercise federal question jurisdiction

over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the

Pennsylvania state law claim pursuant to 28 U.S.C. § 1367.

Now, almost ten months after Nowak began this litigation, Thoroughbred moves to

compel arbitration or, in the alternative, to dismiss Nowak's wrongful discharge claim.  I will

deny Thoroughbred's motion because Thoroughbred has waived its right to compel arbitration,

and Nowak has sufficiently alleged a claim for wrongful discharge.

## I. BACKGROUND

### A. Nowak's Employment with Thoroughbred

In January 2016, Nowak began working for Thoroughbred, a live and televised horse

racing business, as a Safety Coordinator.  Second Am. Compl. ¶¶ 2, 6, 8.  Nowak was a licensed

racing official who had extensive experience as a jockey, exercise rider, and thoroughbred trainer. *Id.* ¶ 7. As the Safety Coordinator, some of Nowak's duties included "identifying risks and enforcing safety practices . . . ; checking equipment . . . ; explaining rules . . . ; reviewing video of on track incidents and accidents; preparing incident and accident reports; [and] reporting safety violations to licensed security personnel, stewards and the racing secretary." *Id.* ¶ 8.

In October 2018, Nowak began reporting to Racing Secretary, David Osojnak. *Id.* ¶ 10. In November 2018, Osojnak spoke to Nowak about the reports of outriders for safety violations that she made to him and the licensed security personnel. *Id.* ¶¶ 13, 16. "Examples of reported outrider safety violations include, but are not limited to, refusing to assist with an unruly horse; and leaving the track without permission, thereby leaving horses unsupervised and/or being unable to assist in emergency situations and/or unable to activate the emergency track warning system." *Id.* ¶ 14. Specifically, Osojnak instructed Nowak "to stop reporting certain outriders for safety violations due to the fact that the reports could be used as evidence that [Thoroughbred] had knowledge of unsafe conditions in any subsequent injury claim." *Id.* ¶ 13.

Despite Osojnak's instruction, Nowak continued to report the outriders for safety violations that she was instructed not to report, including such violations as leaving the track without permission, to both Osojnak and the licensed security personnel. *Id.* ¶¶ 15, 16. Nowak reported these safety violations on a weekly, or more frequent, basis throughout her employment because she was the Safety Coordinator and was required by Pennsylvania law to report the violations. *Id.* ¶¶ 15, 35-36 (citing 58 Pa. Code § 163.291, 163.6).

On February 7, 2019, Osojnak terminated Nowak's employment, and told her that she was being discharged because she did not have the skills to perform the Safety Coordinator

position. *Id.* ¶¶ 17-18. Nowak, a female, was replaced by Donnie Smith, a male, who had been working in the office and not in a safety role. *Id.* ¶ 20. Nowak "had as much, or more, experience than Smith as a thoroughbred jockey, exercise rider and/or trainer; and was as, or more, qualified than Smith for the position." *Id.* ¶ 21.

**B. Nowak's Arbitration Agreement with Thoroughbred**

More than two years after Nowak began working for Thoroughbred, on September 10, 2018, Nowak entered into an Arbitration Agreement with Thoroughbred. Def.'s Mot. to Compel Ex. A. In the Arbitration Agreement, Nowak and Thoroughbred "mutually agree[d] to resolve by arbitration all disputes, claims or controversies, past, present or future, of any kind related to [her] application for employment, employment, or the termination of [her] employment that the Company may have against her or that [she] may have against the Company." *Id.* "Unless specifically excluded . . . , th[e] Agreement applies, without limitation, to all claims of any kind." *Id.*

**C. Procedural History**

On May 29, 2020, Nowak filed the Complaint and initiated this action. ECF No. 1. On July 14, 2020, Thoroughbred filed a motion to dismiss all counts of the Complaint for failure to state a claim. ECF No. 4. In response, Nowak filed an Amended Complaint. ECF No. 5. The Court denied Thoroughbred's motion to dismiss as moot because Nowak had filed an Amended Complaint. ECF No. 6. On August 7, 2020, Nowak filed a new motion to dismiss Nowak's Amended Complaint. ECF No. 7. Nowak filed a response to the motion to dismiss, and Thoroughbred filed a reply to Nowak's response. ECF Nos. 11-12.

On September 23, 2020, Thoroughbred notified Nowak of the existence of the Arbitration Agreement. Def.'s Mot. 4; Pl.'s Resp. 6. When the parties met and conferred in advance of the

Rule 16 Pretrial Scheduling Conference, on October 5, 2020, Thoroughbred again mentioned the Arbitration Agreement to Nowak.  Def.'s Mot. 4; Pl.'s Surreply Ex. C; *see also* ECF No. 13.  On October 22, 2020, the parties filed a joint proposed discovery plan under Rule 26(f).  ECF No. 13.  In the discovery plan, the parties noted: "On September 10, 2018, Plaintiff signed an Arbitration Agreement, which Defendant believes governs this dispute, and has advised Plaintiff of the same in order to avoid any prejudice.  In response, Plaintiff advised Defendant of her intention to oppose any motion to compel arbitration."  *Id.*

On October 29, 2020, the Court held a Rule 16 Pretrial Scheduling Conference.  ECF No. 15.  During the conference, the Court heard oral argument on the motion to dismiss and decided to rule on the motion at a future date.  ECF No. 28 at 5:25-14:9.  The Court also agreed with the parties' request to stay discovery until after resolution of the motion to dismiss.  *Id.* at 14:12-19.

At the end of the Rule 16 conference, the Court asked the parties if they were interested in a settlement conference.  *Id.* at 15:3. Nowak deferred to Thoroughbred to make the decision whether a settlement conference would be helpful.  *Id.* at 15:4. Thoroughbred responded, "Defense certainly would welcome an early resolution in this matter."  *Id.* at 15:11-12.  For that reason, the Court decided to refer the matter to Magistrate Judge David R. Strawbridge for settlement and to defer ruling on the pending motion to dismiss.  ECF No. 14; ECF No. 28 at 16:15.  During the conference, Thoroughbred never mentioned the existence of the Arbitration Agreement, even when the Court discussed with Thoroughbred whether to refer the case to Judge Strawbridge for settlement.

After the Rule 16 conference, on October 29, 2020, the Court issued an order referring the case to Judge Strawbridge for settlement and instructed the parties to jointly report back to the Court at the conclusion of the settlement conference.  ECF No. 14.

On November 20, 2020, Judge Strawbridge conducted an initial telephone conference with the parties to discuss settlement. ECF Nos. 16-17. On December 3, 2020, Judge Strawbridge scheduled a settlement conference for January 11, 2021. ECF No. 18. In preparation for the settlement conference, Judge Strawbridge ordered the parties to exchange some documents, including those required by Federal Rule of Civil Procedure 26(a), mitigation documents, Nowak's personnel file, and documents related to Nowak's employment and termination. *Id*. In addition, Judge Strawbridge ordered each party to submit a settlement memorandum prior to the conference. *Id*.

On January 11, 2021, Judge Strawbridge conducted a three-and-a-half-hour settlement conference. ECF No. 19. Although the parties had been ordered to jointly report back after the conclusion of the settlement conference, the parties failed to do so. *See* ECF No. 14. Accordingly, on March 5, 2021, the Court ordered the parties to file a joint status report on the progress of their settlement discussions. ECF No. 20. On March 8, 2021, when the parties conferred about filing a joint status report, Thoroughbred reminded Nowak of the Arbitration Agreement. Def.'s Reply 7. On March 9, 2021, the parties filed their joint status report, informing the Court that they were unable to reach a settlement. ECF No. 21. The status report did not mention the Arbitration Agreement. *Id.*

On March 18, 2021, the Court denied Thoroughbred's motion to dismiss as to Nowak's Title VII and PHRA claims. ECF No. 23. The Court granted Thoroughbred's motion to dismiss as to Nowak's wrongful discharge claim but gave Nowak leave to file an amended complaint. *Id*.

On March 19, 2021, one day after the Court ruled on Thoroughbred's motion to dismiss, Thoroughbred filed a motion to compel arbitration. ECF No. 31. On April 2, 2021, Nowak filed

a Second Amended Complaint.  ECF No. 27.  As a result, on April 8, 2021, the Court denied

Thoroughbred's motion to compel as moot.  ECF No. 30.  On April 16, 2021, Thoroughbred

filed its current motion to compel arbitration or, in the alternative, to dismiss Nowak's wrongful

discharge claim.  ECF No. 31.

## II. STANDARD OF REVIEW

In deciding a motion to compel arbitration, a district court may either employ the motion

to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary

judgment standard under Federal Rule of Civil Procedure 56.  *Guidotti v. Legal Helpers Debt*

*Resol., L.L.C.*, 716 F.3d 764, 771-76 (3d Cir. 2013).  The Third Circuit provides the following

guidance on when each standard is appropriate to apply:

> [W]hen it is apparent, based on "the face of a complaint, and documents relied upon
> in the complaint," that certain of a party's claims "are subject to an enforceable
> arbitration clause, a motion to compel arbitration should be considered under a Rule
> 12(b)(6) standard without discovery's delay." But if the complaint and its
> supporting documents are unclear regarding the agreement to arbitrate, or if the
> plaintiff has responded to a motion to compel arbitration with additional facts
> sufficient to place the agreement to arbitrate in issue, then "the parties should be
> entitled to discovery on the question of arbitrability before a court entertains further
> briefing on [the] question."

*Id.* at 776 (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474,

482 (E.D. Pa. 2011)).  Because Thoroughbred relies solely on the Second Amended Complaint

and the Arbitration Agreement, the Rule 12(b)(6) standard applies to Thoroughbred's motion to

compel arbitration.[1]

---

[1] Although Nowak did not attach the Arbitration Agreement to the Second Amended Complaint,
Thoroughbred attached the Arbitration Agreement to the motion to compel arbitration.  Because the
Arbitration Agreement is integral to Nowak's claims, and the parties do not dispute the authenticity of the
document, it is proper to consider it under Rule 12(b)(6).  *See Curtis v. Cintas Corp.*, 229 F. Supp. 3d
312, 315 (E.D. Pa. 2017) (considering arbitration agreement in deciding whether to grant a motion to
compel arbitration under Rule 12(b)(6)).  Moreover, "[i]t would frustrate the purposes of the Federal
Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a complaint need not be detailed." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021). But a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)). "Plausible does not mean possible. The facts must be more than 'merely consistent with a defendant's liability.' But plausible does not mean probable either. The court need only be able to draw a 'reasonable inference' that the defendant has broken the law." *Martinez*, 986 F.3d at 265 (quoting *Iqbal*, 556 U.S. at 678).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a

---

failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016).

'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).  Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Thoroughbred moves to compel arbitration of this action pursuant to the parties' Arbitration Agreement.  In the alternative, Thoroughbred moves to dismiss Nowak's wrongful discharge claim for failure to state a claim.  Nowak opposes the motion to compel on the basis that Thoroughbred has waived its right to compel arbitration.[2]  Nowak also opposes the partial motion to dismiss on the basis that she has sufficiently pleaded her wrongful discharge claim.  I will deny Thoroughbred's motion because Thoroughbred has waived its right to compel arbitration, and Nowak has adequately alleged a claim for wrongful discharge.

### A. Motion to Compel Arbitration

Thoroughbred moves to compel arbitration pursuant to the parties' Arbitration Agreement.  Nowak opposes the motion to compel on the basis that Thoroughbred has waived its right to compel arbitration.

"The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ('FAA'), creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes."

---

[2] Nowak also argues that the motion to compel should be denied because the Arbitration Agreement is not a valid and enforceable contract.  Because Thoroughbred has waived its right to compel arbitration, it is unnecessary to address this argument.  *See In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116-17 (3d Cir. 2012) (declining to reach the issue of whether the arbitration clause was enforceable because the defendant had waived its right to arbitrate).

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009).  "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration."  *Id.* (citations omitted).  "Nonetheless, not every motion to compel arbitration must be granted.  One of the accepted defenses to such a motion is that the party has waived its right to compel arbitration."  *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008).

"'Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred,' and 'will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'"  *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010)).  Additionally, "a party seeking arbitration may waive its right to arbitration when the party opposing the arbitration demonstrates sufficient prejudice arising from the delay of the party seeking arbitration in making its demand."  *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011).

"'[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct."  *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992)).  The concept of prejudice includes not only substantive prejudice to a party's legal position but also prejudice that results from expense and delay that could have been avoided if the right to arbitration had not been belatedly invoked.  *Nino*, 609 F.3d at 209.  "In other words, the

investment of considerable time and money litigating a case may amount to sufficient prejudice to bar a later-asserted right to arbitrate." *Id.*

The following six nonexclusive factors, known as the *Hoxworth* factors, help guide the prejudice inquiry:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray*, 654 F.3d at 451 (citing *Hoxworth*, 980 F.2d at 926-27).  Not every factor must be present to justify waiver.  *Nino*, 609 F.3d at 209.  To determine whether a party has waived the right to arbitrate, a court must conduct a case specific and individualized prejudice inquiry.  *Id.*

### 1. Timeliness of the Motion to Arbitrate

The first factor is the timeliness of the motion to arbitrate.  In other words, this factor measures how long the party seeking to arbitrate delayed moving for arbitration after the filing of the suit. *Gray*, 654 F.3d at 454-55. The longer the delay, the more likely a court is to find waiver of the right to arbitrate. *See In re Pharmacy*, 700 F.3d at 118. Thoroughbred waited almost ten months after Nowak filed suit to move to compel arbitration.  Nowak contends that this ten-month delay weighs in favor of a finding of waiver.  Thoroughbred counters that this factor does not weigh in favor of waiver because Thoroughbred reasonably delayed filing a motion to compel arbitration until after settlement discussions failed.

On two occasions, the Third Circuit has held that a ten-month delay is significant enough to weigh in favor of a finding of waiver. *In re Pharmacy*, 700 F.3d at 118; *Gray*, 654 F.3d 454-55; *see also Hoxworth*, 980 F.2d at 925 (finding of waiver after eleven-month delay).  In

addition, a delay of almost ten months is considerably longer than the cases in which the Third

Circuit has found no waiver. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir.

2004) (thirty-eight days); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000)

(one-and-a-half months); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1069 (3d Cir. 1995) (two

months). While a movant's explanation for its delay might impact a court's determination of the

timeliness of a motion to compel, it must be convincing. *See Nino*, 609 F.3d at 210 (noting that

"to the extent our review of the motion's timeliness should consider the movant's explanation for

its delay, [the movant's] stated rationale for having waited so long to seek to enforce the

arbitration agreement is utterly unconvincing").

Although an almost ten-month delay is quite lengthy and appears to weigh in favor of

waiver, Thoroughbred contends that its delay is reasonable because it waited only ten days after

settlement failed to file a motion to compel arbitration.  The record reveals otherwise.  The

parties' settlement conference occurred on January 11, 2021, and Thoroughbred did not move to

compel arbitration until March 19, 2021.  Although the Court ordered the parties to provide a

joint status report after the conclusion of the settlement conference, they failed to do so.  More

than a month after the settlement conference occurred, on March 5, 2021, the Court again

ordered the parties to provide a joint status report.  On March 9, 2021, the parties finally

informed the Court that they were unable to reach a settlement agreement.[3]  Thus, the only thing

that occurred ten days before Thoroughbred filed its motion to compel is that the Court finally

---

[3] Thoroughbred filed its motion to compel arbitration only one day after the Court ruled on
Thoroughbred's motion to dismiss and allowed Novak's Title VII and PHRA claims to move forward.
The fact that Thoroughbred delayed "until it received a determination from this Court on its merits-based
motion, one that was partially unfavorable, defies the main purpose underlying arbitration in the first
place: 'arbitration is meant to streamline the proceedings, lower costs, and conserve private and judicial
resources.'"  *Price v. UBS Fin. Servs., Inc.*, No. CV 2:17-01882, 2018 WL 1203471, at *4 (D.N.J. Mar. 8,
2018) (quoting *Nino*, 609 F.3d at 209).

learned that the settlement conference was unsuccessful. Thoroughbred's explanation for its delay is unconvincing. Because Thoroughbred waited almost ten months to move to compel arbitration, this factor weighs in favor of a finding of waiver.

### 2. Merits Motion Practice

The second factor is the extent to which the party seeking to compel arbitration has contested the merits of the opposing party's claims. *Gray*, 654 F.3d at 455. The more the party seeking to compel arbitration has engaged in activity on the merits, the more likely a court is to find waiver of the right to arbitrate. *See In re Pharmacy*, 700 F.3d at 118. In *In re* Pharmacy, the Third Circuit held that when a party files a motion to dismiss and engages in significant briefing, and then files a motion for reconsideration of the court's ruling on its motion to dismiss, this degree of merits motion practice weighs in favor of a finding of waiver. *Id.* This is substantially more merits-based activity than in cases in which the Third Circuit has found no waiver of the right to arbitrate. *Id.*; *see Palcko*, 372 F.3d at 598 (motion to dismiss but only for insufficient service of process); *PaineWebber*, 61 F.3d at 1069 (no briefing on the merits).[4]

Similar to the defendant in *In re Pharmacy*, Thoroughbred repeatedly contested the merits of Nowak's claims and there was a ten-month delay in moving to compel arbitration. Thoroughbred filed a motion to dismiss all of Nowak's claims for failure to state a claim. In response, Nowak filed an Amended Complaint, and the Court dismissed the motion to dismiss as

---

[4] Thoroughbred relies on *Wood v. Prudential Insurance Company of America*, 207 F.3d 674, to argue that not enough merits motions practice has occurred to weigh in favor of a finding of waiver. In *Wood*, the Third Circuit held that the movant's filing of a motion to dismiss on the merits was "not enough to overcome the presumption of arbitrability." 207 F.3d at 680. *Wood* is distinguishable, however, because the Third Circuit never addressed whether this factor—the extent of merits motion practice—weighed in favor of or against arbitration. *Id.* Rather, the Third Circuit summarily refused to find waiver and did not engage in an independent analysis of each *Hoxworth* factor because arbitration had only been delayed by one-and-a-half months and discovery had been nominal. *See id.* Even if the Third Circuit had independently addressed this factor, *Wood* would not be controlling because Thoroughbred engaged in far more merits practice than the filing of a single motion to dismiss on the merits.

moot. Thoroughbred then filed a new motion to dismiss every claim in Nowak's Amended

Complaint for failure to state a claim.  After Nowak filed a brief in opposition to the motion,

Thoroughbred filed another brief in support of its motion.  Additionally, Thoroughbred presented

oral argument to the Court on its second motion to dismiss.  Because Thoroughbred challenged

the merits of Nowak's suit on a number of occasions, and Nowak expended resources responding

to these challenges, this factor weighs in favor of a finding of waiver.

### 3. Notification of Intent to Arbitrate

The third factor is "whether the party seeking arbitration informed its adversary of its

intent to pursue arbitration prior to seeking to enjoin the court proceedings."  *Gray*, 654 F.3d at

451.  An early notice of a movant's intent to pursue arbitration typically weighs against a finding

of waiver.  *See Nino*, 609 F.3d at 211.  In *Nino*, however, the Third Circuit explained: "In the

waiver context, where prejudice to the non-movant is the key, an initial invocation of the defense

of arbitration becomes less significant the longer and more actively a party litigates after having

made that initial invocation without making any further mention of arbitration."  *Id.* at 211-12.

In *Nino*, the defendant initially raised arbitration as an affirmative defense in its answer to

the plaintiff's case but never raised arbitration again during the fifteen months it litigated the

case before moving to compel arbitration.  *Id.* at 199.  The Third Circuit held that even though

the defendant had raised arbitration as an affirmative defense, "the third *Hoxworth* factor

weighed in favor of finding a waiver of the right to arbitrate because the significance of the

notice diminished the longer the defendant delayed in moving to compel arbitration."  *Gray*, 654

F.3d at 458 (citing *Nino*, 609 F.3d at 211-12).  The significance of the notice diminishes as a

defendant's delay in moving to compel arbitration increases because the longer the delay and the

more actively the defendant litigates, the more likely the plaintiff will suffer prejudice.  *Nino*,

609 F.3d at 211-12.  Prejudice results because both a party's litigation strategy and approach to discovery will greatly differ based on whether the case is to be litigated or arbitrated.  *Id.* at 211.  In addition to substantive prejudice, a party who believes a case is going to trial may expend considerable time and money on the litigation that it would otherwise not expend if the case went to arbitration.  *Gray*, 654 F.3d at 458.

Thoroughbred did not inform Nowak of the existence of the Arbitration Agreement until September 23, 2020, almost four months after initiation of the suit, at which time the parties had already fully briefed Thoroughbred's second motion to dismiss.  On October 22, 2020, Thoroughbred stated in the discovery plan that the parties had signed an arbitration agreement.  Thoroughbred then continued to litigate the case for the next four and half months without mention of the Arbitration Agreement.

Instead of raising its right to arbitrate, Thoroughbred welcomed referral of the case to settlement before Judge Strawbridge and did not mention arbitration during the Rule 16 conference.  As a result of Thoroughbred's interest in settlement, Judge Strawbridge conducted two conferences with the parties, including a settlement conference that lasted three-and-a-half hours.  To prepare for this settlement conference, the parties had to exchange documents and submit settlement memoranda.  Thoroughbred waited until after the parties had already expended significant time and money on preparing and participating in the settlement conference to again remind Nowak of the Arbitration Agreement.  On March 8, 2021, Thoroughbred finally reminded Nowak of the Arbitration Agreement, and less than two weeks later Thoroughbred filed a motion to compel arbitration.

Thoroughbred delayed four months in notifying Nowak of the Arbitration Agreement, and then delayed another six months before filing a motion to compel.  As a result of these

14

delays, Nowak expended time and money that she may not have expended had she known that Thoroughbred intended to compel arbitration. Although Thoroughbred notified Nowak of the Arbitration Agreement on more than one occasion, the first notice came after the parties had already fully briefed the second motion to dismiss, and the significance of this notice diminished during the additional six-month period of delay before Thoroughbred finally filed a motion to compel arbitration. Given these delays in notice, this factor weighs somewhat in favor of a finding of waiver.

### 4. Non-Merits Motion Practice

The fourth factor examines the extent to which the party seeking arbitration has engaged in non-merits motion practice. *Gray*, 654 F.3d at 451. The parties agree that they have not engaged in any non-merits motion practice. Accordingly, Thoroughbred contends that "this factor neither weighs in favor of or against waiver." Def.'s Reply 8. Because Nowak does not dispute Thoroughbred's contention, the Court adopts that the parties' position that this factor is neutral.

### 5. Acquiescence to the Court's Pretrial Orders

The fifth factor examines the extent to which the party seeking arbitration has "assent[ed] to the district court's pretrial orders." *Hoxworth*, 980 F.2d at 927. The more a party acquiesces to a court's pretrial orders, the more the party acts inconsistently with the right to arbitrate. *See Nino*, 609 F.3d at 212. "Cases in which [the Third Circuit] ha[s] found no waiver generally were not litigated long enough to feature any acquiescence in pretrial orders." *In re Pharmacy*, 700 F.3d at 119. In contrast, "long-term assent to . . . pretrial orders weighs heavily in favor of a finding of waiver." *Nino*, 609 F.3d at 213.

*Gray* provides an example of a party's long-term assent to pretrial orders.  In *Gray,* the Third Circuit held that this factor weighed heavily in favor of waiver because the party seeking arbitration had participated in three status conferences, filed a Rule 26(f) discovery report, and attended court-ordered mediation.  *Gray*, 654 F.3d at 459-60.  In part, the Third Circuit concluded that the party's assent to pretrial orders weighed in favor of waiver because this acquiescence caused the party opposing arbitration to incur significant legal expenses that could have been avoided.  *Id.*

Thoroughbred's level of acquiescence to pretrial orders is equivalent to or greater than the level of acquiescence that the Third Circuit held heavily weighed in favor of waiver in *Gray*. Over the course of almost ten months, Thoroughbred filed a Rule 26(f) discovery plan, participated in a Rule 16 conference, presented oral argument on its motion to dismiss, participated in an initial telephone conference with Judge Strawbridge, exchanged documents and submitted a settlement memorandum ordered by Judge Strawbridge, participated in a three-and-a-half hour settlement conference with Judge Strawbridge, and filed a court-ordered joint status report.  Thoroughbred's assent to multiple pretrial orders frustrated the fundamental purposes of  arbitration: "to streamline the proceedings, lower costs, and conserve private and judicial resources."  *Nino*, 609 F.3d at 209.  "[I]t furthers none of those purposes when a party actively litigates a case for an extended period only to belatedly assert that the dispute should have been arbitrated, not litigated, in the first place." *Id.*

By assenting to these pretrial orders and participating in the settlement conference, Thoroughbred prejudiced Nowak by forcing her to expend time and money that could have been avoided.  Additionally, Thoroughbred wasted judicial resources, especially the resources provided by Judge Strawbridge who spent almost four hours in conferences with the parties and

additional time reviewing their submissions prior to the settlement conference.  Accordingly, Thoroughbred's acquiescence to pretrial orders weighs heavily in favor of a finding of waiver.

### 6. Extent Engaged in Discovery

The final factor "focuses on the amount and scope of discovery in which the parties engaged prior to the request for arbitration." *Gray*, 654 F.3d at 460.  Only in cases that "have uniformly featured significant discovery activity in the district court" has the Third Circuit found that this factor favors waiver.  *In re Pharmacy*, 700 F.3d at 120 (citing cases). In cases where no discovery has occurred, "this factor cuts significantly against a finding of waiver." *Id.*

Significant discovery has not occurred in this case because the deadlines for discovery were stayed by the request of the parties until after resolution of the motion to dismiss, which the Court resolved only one day prior to Thoroughbred's filing of a motion to compel arbitration. Prior to the settlement conference, the parties engaged in limited document discovery ordered by Judge Strawbridge.  This exchange of documents, however, only included documents required by Federal Rule of Civil Procedure 26(a), mitigation documents, Nowak's personnel file, and documents related to Nowak's employment and termination.  Notably, the parties have not conducted any depositions, engaged in expert discovery; or served or exchanged interrogatories, document requests, or requests for admission. Because the parties have engaged in very little discovery, this factor weighs heavily against a finding of waiver.

### 7. Summary

The Third Circuit has repeatedly stated that the *Hoxworth* factors are nonexclusive, that all factors do not need to be present to justify a finding of waiver, and that no single factor is determinative.  *In re Pharmacy*, 700 F.3d at 120; *Nino*, 609 F.3d at 209.  In weighing the factors,

"'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct." *Ehleiter*, 482 F.3d at 222 (quoting *Hoxworth*, 980 F.2d at 925).

An examination of the *Hoxworth* factors elucidates that Nowak has suffered sufficient prejudice to bar Thoroughbred from succeeding on its delayed motion to compel arbitration. Four of the factors favor a finding of waiver of arbitration, including Thoroughbred's acquiescence to the Court's pretrial orders, which heavily weighs in favor of a finding of waiver. One factor, the non-merits motion practice, is neutral, but "this factor is not an absolute requirement, and [the Third Circuit] *ha[s]* found waiver even where no significant non-merits motion practice occurred." *In re Pharmacy*, 700 F.3d at 119. A single factor, the extent the parties engaged in discovery, weighs heavily against a finding of waiver.

Thoroughbred relies on the parties' minimal exchange of discovery to argue that it is inappropriate to hold that Thoroughbred has waived its right to arbitrate. While significant discovery occurred in most cases where the Third Circuit found waiver, it is not a requirement for finding waiver. *In re Pharmacy*, 700 F.3d at 120.

In *In re Pharmacy*, the Third Circuit held that the defendant had waived its right to arbitrate even though no discovery occurred. *Id.* at 120-22. Central to its finding that the defendant had waived its right to arbitrate was the fact that the defendant had delayed bringing a motion to compel for ten months, during which time the defendant had "aggressively sought a resolution on the merits." *Id.* at 121. The Third Circuit found that this delay prejudiced the plaintiffs by causing them to expend time, expense, and legal fees that could have been avoided. *Id.* Specifically, the Third Circuit noted that if the defendant had moved to compel arbitration immediately, the plaintiffs would not have expended resources defending against the merits-based motion to dismiss because it never would have been filed. *Id.* The Third Circuit also

found that the defendant's actions were inconsistent with the right to arbitrate, explaining that "[a] party . . . 'should not be allowed to delay its demand for arbitration and use federal court proceedings to test the water before taking a swim.'" *Id.* (quoting *Gray*, 654 F.3d at 453). Because the defendant had acted inconsistently with the right to arbitrate and the ten-month delay had prejudiced the plaintiffs, the Third Circuit held that the defendant had waived its right to arbitrate.

Unlike in *In re Pharmacy*, where the parties engaged in no discovery, the parties here have engaged in a small amount of discovery. But similar to *In re Pharmacy*, the lack of significant discovery does not foreclose a finding that Thoroughbred has waived its right to arbitrate. Like the defendant in *In re Pharmacy*, Thoroughbred's actions during the almost ten-month delay have been inconsistent with the right to arbitrate and have prejudiced Nowak. Before moving to compel arbitration, Thoroughbred moved to dismiss all of Nowak's claims on the merits, welcomed the opportunity to have the case referred to Judge Strawbridge for settlement, and actively participated in settlement preparation and conferences with Judge Strawbridge. Only after Thoroughbred's efforts at dismissal and settlement were unsuccessful, did Thoroughbred finally move to compel arbitration. Thoroughbred "should not be allowed to delay its demand for arbitration and use federal court proceedings to test the water before taking a swim." *Id.* (quoting *Gray*, 654 F.3d at 453). Nowak expended time, expense, and legal fees to defend against Thoroughbred's motions to dismiss and to participate in settlement discussions before Judge Strawbridge. As the Third Circuit noted in *In re Pharmacy*, if Thoroughbred had moved to compel arbitration immediately, Nowak could have avoided expending these resources.

The *Hoxworth* factors weigh in favor a finding of waiver because Nowak has suffered sufficient prejudice from Thoroughbred's delay in seeking arbitration.[5]  I will deny Thoroughbred's motion to compel arbitration because Thoroughbred has waived its right to arbitrate.

**B. Motion to Dismiss Wrongful Discharge Claim**

Nowak alleges that Thoroughbred violated Pennsylvania law by wrongfully terminating her employment in retaliation for her continued reporting of safety violations.  In Pennsylvania, there is an "extremely strong" presumption that employment is at-will and an employer may terminate an employee for any reason absent an employment contract.  *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).  "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship."  *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009).  An employee is entitled to bring a cause of action for termination of an at-will employment relationship "only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth."  *McLaughlin*, 750 A.2d at 287.  In order to set forth a claim for wrongful discharge, a plaintiff "must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee."  *Id.* at 289.  Where an employer infringes on an employee's statutory rights, courts have recognized a public policy exception to at-will employment.  *Weaver*, 975 A.2d at 563.

---

[5]  The Court is aware that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "an allegation of waiver."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  In this case, however, there is no doubt that Nowak suffered prejudice significant enough to find waiver as a result of Thoroughbred's delay.

Nowak alleges that Thoroughbred terminated her employment in retaliation for her compliance with her statutorily mandated duty to report safety violations.  Pennsylvania law provides: "A person licensed by the [Horse Racing] Commission . . . who is in possession of information regarding attempts or acts done in violation of this chapter or statute affecting racing, shall promptly report the knowledge or information to the stewards, the Commission or its licensed security personnel."  58 Pa. Code § 163.6(a).  The statute further provides: "Racing associations shall take every reasonable precaution to make their premises safe for the protection of the persons and property of patrons and licensees."  58 Pa. Code § 163.291(a).  Nowak alleges that she was a licensed racing official who was required pursuant to §§ 163.6(a), 163.291(a) to report safety violations to the stewards, the Commission, or its licensed security personnel, and that she was terminated in retaliation for making these reports.

While the Supreme Court of Pennsylvania has not articulated the elements of a cause of action for retaliatory wrongful discharge, federal courts in the Third Circuit have borrowed the analytical structure used in Title VII retaliation cases to determine whether an employee has been wrongfully discharged.  *Parker v. Sch. Dist. of Phila.*, 415 F. Supp. 3d 544, 564-65 (E.D. Pa. 2019), *aff'd*, 823 F. App'x 68 (3d Cir. 2020) (collecting cases); *see also Steele v. Pelmor Lab'ys, Inc.*, No. 16-CV-3088, 2017 WL 5515919, at *6 (E.D. Pa. Apr. 18, 2017), *aff'd*, 725 F. App'x 176 (3d Cir. 2018) ("The elements of [a wrongful discharge claim] have not been established by the Pennsylvania Supreme Court, but federal courts have predicted that it would apply the *McDonnell Douglas* framework used for retaliation suits under Title VII.").  Accordingly, courts in the Third Circuit have held that the following must be demonstrated to establish a prima facie case of retaliatory discharge: "(1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected

activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Steele*, 2017 WL 5515919, at *6 (quoting *Deily v. Waste Mgmt. of Allentown*, 55 F. App'x 605, 608 (3d Cir. 2003)).

Thoroughbred moves to dismiss Nowak's wrongful discharge claim based on the argument that Nowak has neither alleged prong one—that she engaged in a protected activity, nor prong three—that a causal link exists between her protected activity and her termination. At the motion to dismiss stage, Nowak is not required to establish a prima facie case of retaliation, but she must "allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

Nowak alleges sufficient facts in the Second Amended Complaint to raise a reasonable expectation that discovery will reveal evidence that Nowak engaged in protected activity and that there is a causal link between Nowak's protected activity and her termination.[6]  Nowak alleges that she was required by law to report safety violations.  In November 2018, Osojnak told her to stop reporting some outriders for safety violations.  These outriders for safety violations included

---

[6] On March 18, 2021, the Court granted Thoroughbred's motion to dismiss Nowak's wrongful discharge claim in her Amended Complaint because she had not adequately pleaded the claim.  ECF No. 23.  The Court found the Amended Complaint insufficient because:

> While Nowak list[ed] examples of reported outrider safety violations in her Amened Complaint, she d[id] not specify the exact safety violations she reported after Osojnak told her to stop reporting certain violations.  In addition, while Nowak allege[d] that one of her duties as a Safety Coordinator included "reporting safety violations to licensed security personnel, stewards and the racing secretary," Am. Compl. ¶ 8, she never allege[d] to whom she reported any of the outrider safety violations.  Moreover, while Nowak allege[d] that Osojnak told her to stop reporting certain outrider safety violations, she d[id] not allege whether Osojnak or anyone else knew that she continued to report outrider safety violations after he told her not to report them.  Lastly, the Amended Complaint [wa]s silent as to whether Osojnak or someone else made the decision to terminate Nowak's employment.

ECF No. 22 at 7-8.  In the Second Amended Complaint, Nowak has corrected these pleading deficiencies.

"refusing to assist with an unruly horse; and leaving the track without permission, thereby leaving horses unsupervised and/or being unable to assist in emergency situations and/or unable to activate the emergency track warning system."  Second Am. Compl. ¶ 14.  Despite this, Nowak continued to report these outriders for safety violations, including leaving the track without permission, that Osojnak told her not to report on a weekly, or even more frequent, basis to both Osojnak and licensed security personnel.  On February 7, 2019, less than three months after Osojnak told Nowak to stop reporting outriders for safety violations, Osojnak terminated Nowak's employment.

Section 163.6(a) requires a licensed person to report violations of the statute to the stewards, the Commission, or licensed security personnel.  58 Pa. Code § 163.6(a).  Section 163.291(a) requires a racing association to take every reasonable precaution to make its premises safe.  58 Pa. Code § 163.291(a).  As a statutorily mandated reporter, Nowak alleges she was required to report these safety violations because they demonstrated that Thoroughbred was violating § 163.291(a) by failing to take every reasonable precaution to make its premises safe. These allegations are sufficient to raise a reasonable expectation that discovery will reveal evidence that Nowak engaged in protected activity.

Additionally, Nowak's allegations that Osojnak terminated her less than three months after he told her to stop reporting outriders for safety violations, and only a week after her last reported outrider for safety violations, are sufficient to raise a reasonable expectation that discovery will reveal evidence that there is a causal link between Nowak's protected activity and her termination.

Because Nowak has sufficiently alleged a claim for wrongful discharge, I will deny her motion to dismiss this claim.

## IV. CONCLUSION

I will deny Thoroughbred's motion to compel arbitration or, in the alternative, to dismiss Nowak's wrongful discharge claim because Thoroughbred has waived its right to compel arbitration, and Nowak has sufficiently alleged a claim for wrongful discharge.


          _s/ANITA B. BRODY, J._____
          ANITA B. BRODY, J.


Copies **VIA ECF** on